# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **KATHY FLOYD DECANT,** | } |
| **Plaintiff,** | } |
| v. | }   Case No.: 4:11-CV-881-RDP |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF SOCIAL SECURITY,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Kathy Floyd Decant brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed applications for a period of disability and DIB on March 31, 2008, in which she alleged a disability onset date of November 16, 2006. (Tr. 68). After those applications were initially denied, Plaintiff requested a hearing. (Tr. 69, 78). Her request was granted, and on September 28, 2009, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Jerome L. Munford. (Tr. 82, 11, 20).

In his decision, dated November 17, 2009, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB because she failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. (Tr. 20). After the Appeals Council denied Plaintiff's request for review of ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1).

Prior to her alleged onset of disability, Plaintiff worked as a registered nurse from 1991 to 2007. (Tr. 148). Possessing an associates degree in nursing from Gadsden State Community College, she was licensed to practice in Alabama and California. (Tr. 31). Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2012. (Tr. 68). She was forty-three years old at the time of the hearing. (*See* Tr. 68). Plaintiff alleges disability due to foot problems and fibromyalgia. (*See* Tr. 34).

At the hearing, Plaintiff testified that she underwent a bunionectomy in 2000, and that she recovered and returned to work quickly. (Tr. 35). She also alleged that her pain returned in the Summer or Fall of 2006, causing her to seek medical attention. (*Id.*) On December 21, 2006, Plaintiff began seeing Dr. Danny R. Sparks, who recommended that Plaintiff undergo surgery on her right foot and remain off work until the surgery was completed. (Tr. 215). In March 2007, Plaintiff underwent surgery in Sacramento, California, because, she testified, her insurance would not cover surgery in Gadsden, Alabama. (Tr. 35).

After the surgery, pursuant to Dr. Sparks' recommendation, Plaintiff participated in physical therapy. (Tr. 214). By August 14, 2007, x-rays by Dr. Sparks revealed "no acute changes in [Plaintiff's] foot" and that the "foot fracture appear[ed] to be well healed [with] no problems or complications noted. (Tr. 212). Dr. Sparks also observed that Plaintiff "may do regular work in 6 weeks." (*Id.*). On November 27, 2007, Plaintiff reported to Dr. Sparks and indicated that her foot was doing well, but complained of pain in the left hip after accidentally falling down. (Tr. 211). Upon examination, Dr. Sparks found that Plaintiff's left hip alignment was normal with no swelling,

bruising, or signs of instability. (Tr. 211). X-rays showed no acute changes or obvious hip fractures. (*Id.*). Dr. Sparks recommended physical therapy and prescribed Celebrex and Medrol Dosepak. (*Id.*).

Plaintiff followed up with Dr. Sparks on January 3, 2008. (Tr. 210). He again x-rayed Plaintiff's left hip and found no acute changes or obvious fractures. (*Id.*). Plaintiff returned on February 5, 2008 complaining of hip pain. (Tr. 209). Dr. Sparks performed a third x-ray of Plaintiff's left hip and found there were no changes or fractures; however, due to Plaintiff's continued complaints of pain, he diagnosed Plaintiff with arthritis of the hip and recommended an MRI. (*Id.*). The MRI of the hip was found to be "unremarkable." (Tr. 191, 222). On April 1, 2008, during a visit with Dr. Sparks to discuss the results of the MRI scan of her hip, Plaintiff began to report pain in her elbows. (Tr. 207). According to Plaintiff, there was no injury, but she found herself unable to hold objects, open doors, or squeeze her fist. (*Id.*). Dr. Sparks conducted x-rays of her elbows that revealed no obvious fractures or complications and recommended further testing. (*Id.*). Plaintiff underwent the recommended tests on April 7, 2008, and returned to Dr. Sparks on April 15, 2008 to discuss the results. (Tr. 206). Dr. Sparks informed Plaintiff that her test results were normal, but referred her to Dr. Daniel S. Prince, a rheumatologist, for an evaluation of the connective tissue in her elbows, knees, and hips. (*Id.*).

On May 13, 2008, a physical residual functional capacity assessment was conducted by Dr. G. Hampton Smith as part of the disability determination following Plaintiff's March 2008 Social Security applications. (Tr. 234-41). In that assessment, Plaintiff was found to, among other things, be able to occasionally lift 50 pounds and frequently lift 25 pounds, stand or walk for about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and engage in fine finger manipulation. (Tr. 235-37).

On June 18, 2008, Plaintiff met with Dr. Prince who, after finding none of the typical features of lupus or fibromyalgia, diagnosed Plaintiff with Seronegative arthritis. (Tr. 247-48). Dr. Prince recommended that Plaintiff switch medications and begin a nutrient regimen. (Tr. 248). On July

2, 2008, in a follow up examination of Plaintiff, Dr. Prince noted that Plaintiff had switched medications and reported improvement after beginning the nutrient regimen. (Tr. 244). Dr. Prince commented that Plaintiff's MRI scans "really did not show anything" and that, after comprehensive rheumatology laboratory testing, everything came back negative. (*Id.*). In this report, Dr. Prince changed Plaintiff's diagnosis to fibromyalgia. (*Id.*).

Plaintiff returned to Dr. Prince on October 6, 2008, reporting decreased pain. (Tr. 243). Dr. Prince noted that Plaintiff's lumbar spine and neck mobility was limited, but noted good hip motion and no degeneration in her fingers. (Tr. 243). After reasserting his fibromyalgia diagnosis, Dr. Prince increased Plaintiff's Lyrica, and encouraged her to begin an exercise program. (Tr. 243).

On October 22, 2008, Plaintiff returned to Dr. Prince, complaining of an allergic reaction to her Lyrica prescription and continuing aches and pains. (R. 242). After conducting a physical examination, Dr. Prince instructed Plaintiff to have her primary doctor perform a chest x-ray and an ultrasound of the gallbladder, try new medication, and return in 6-8 weeks. (*Id.*). Plaintiff did not return for a follow up. (Tr. 254).

From October 31, 2008 through August 5, 2009, Plaintiff saw Dr. Frances Koe for medical care. (Tr. 258-67). During two separate visits, on October 31, 2008 and December 11, 2008, Plaintiff complained of respiratory problems (shortness of breath, coughing), but did not complain about her hip or foot. (Tr. 264-67). On July 29, 2009, Plaintiff complained to Dr. Koe of memory problems, difficulty focusing, and an inability to lift anything over 5 pounds. (Tr. 262-63). She also reported that her peripheral vision twice turned green and that she was experiencing pain in her elbows. (Tr. 263). A physical exam did not reveal any problems and Plaintiff was found to have "normal strength 5/5 throughout," although Plaintiff's grip was found to be slightly weak. (Tr. 263). Dr. Koe's notes report the same information on a subsequent visit on October 5, 2009.[1]

---

[1] There may be some question as to whether the progress note from Dr. Koe's October 5th report accurately reflects Plaintiff's physical condition at the time because it is almost entirely identical to the progress note from Dr. Koe's July 29th report. *Compare* Tr. at 261 *with* Tr. at 263.

On June 17, 2009, eight months after she had last seen him, Plaintiff returned to Dr. Prince requesting a physical capacities evaluation. (Tr. 254). According to Dr. Prince's report, the purpose of the meeting was to address "a set of insurance records that request medical reports." (*Id.*). Dr. Prince cautioned in his report that, since he had not seen Plaintiff in eight months, "[he] [was] in no position to render any opinion." (*Id.*). With that preface, Dr. Prince conducted a physical capacity evaluation that lists, among other things, the following limitations: that Plaintiff could sit for three hours, stand two hours, and walk for an hour in an eight-hour workday; that Plaintiff could occasionally lift and carry up to five pounds with either or both of her hands, as well as push and pull with either or both legs; that Plaintiff could occasionally use her hands for simple grasping, fine manipulation, and fingering/handling objects; and that Plaintiff would be totally restricted from working around unprotected heights and moving machinery, moderately impaired in her ability to work around marked temperature, humidity changes, and in operating automotive equipment, and her ability to work around dust, fumes, and gases would be mildly impaired. (Tr. 255-56). It is this evaluation that is at issue in the current case.

## II.    ALJ Decision

Disability under the Act is determined under a five-step analysis. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment, or a combination of medical impairments, that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521. Absent such impairment, the claimant may not claim disability.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled. If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then he is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.

The last part of the analysis calls upon the ALJ to determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

Here, the ALJ determined that (1) Plaintiff has not engaged in substantial gainful activity since the onset of the alleged disability; (2) Plaintiff's fibromyalgia constitutes a "severe" impairments during the relevant time period; but that (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P Appendix 1 (Tr. 19); (4) Plaintiff is unable to perform her past relevant work; but that (5) there are a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 19-20). Thus, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 20).

In reaching his determination of Plaintiff's RFC, the ALJ gave limited weight to Dr. Prince's June 2009 report because he found it to be inconsistent with Dr. Prince's own clinical records and based on Plaintiff's subjective allegations, which he had already found not fully credible. (Tr. 17).

6

He also discounted Dr. Prince's report because Dr. Price had not seen Plaintiff in the eight months prior to the report and had himself disclaimed that he was in no position to render an opinion. (*Id.*). In concluding that Plaintiff was capable of sedentary work, the ALJ also relied upon the report of Dr. Smith. (*Id.*).

### III.     Plaintiff's Arguments

Plaintiff essentially makes two arguments in her brief: (1) that the ALJ improperly gave little or no weight to the testimony of a treating physician when he discredited Dr. Prince's June 2009 report,[2] and (2) that the ALJ's RFC determination that Plaintiff can engage in sedentary work is unsupported by substantial evidence.[3]

### IV.     Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1529 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

---

[2] *See* Pl.'s Mem. At 8 ("[H]ad the ALJ followed and applied the treating physician rule to the facts of this case."), 11 ("Rather than following the plaintiff's treating physician's report and opinion, the ALJ concluded that the plaintiff could perform sedentary work..."), 13 ("To reach this conclusion, the ALJ disregarded Dr. Prince's report and opinion citing no evidence to support this rejection.").

[3] Pl.'s Mem. At 11 ("Does the record in this case contain any evidence to support the ALJ's conclusion that the plaintiff can perform a restricted range of sedentary work?"), 12 ("In this case, there is no good reason ...not to follow the treating physician's report and opinion."), 13 ("Unless the ALJ can point to some medical evidence or opinion evidence to substantiate his conclusion . . . then he has clearly substituted his own opinion for the opinions of the experts."

V.      **Discussion**

After careful review, the court concludes the decision of the ALJ is due to be affirmed because it is supported by substantial evidence and the ALJ correctly applied the law.

   a.      **The ALJ Did Not Err in Discounting Dr. Prince's June 2009 Evaluation**

Plaintiff first argues that the ALJ failed to follow the treating physician rule. (*See* Pl's Mem. at 8-11). This argument does not hold water.

In the Eleventh Circuit, it is well established that "the opinion of a treating physician . . . must be given substantial or considerable weight unless 'good cause' is shown to the Contrary. " *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* Good cause has been found where the opinion was determined to be primarily based on a claimant's own subjective testimony. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004). It has also been found when a physician's statement that a claimant was "'restricted to a four (4) hour work day" contained no clinical data or information to support his opinion." *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).

In this case, it is not entirely clear whether Dr. Prince's report should be afforded deference as a medical opinion in the first place. In the report itself,[4] Dr. Prince expressly cautioned that he was "in no position to render any opinion" because he had not seen the patient in eight months. (Tr. 254). However, the court need not address this issue because, even if the treating physician rule were to apply to Dr. Prince's report, the ALJ's decision to discount Dr. Prince's findings is supported by good cause. As the ALJ pointed out, Dr. Prince's physical capacities evaluation form was "largely based upon the claimant's subjective allegations, which are not fully credible." (Tr. 17). The findings of Dr. Prince's physical capacities evaluation are not bolstered by clinical evidence and

---

[4] For some reason, Plaintiff never draws the court's attention to this report. Nevertheless, the court has carefully reviewed the full record in this case to ensure that any errors or omissions have not fallen through the cracks.

largely contradicted by the physical capacities evaluation of Dr. Smith and the records of Dr. Koe. Dr. Prince himself, in his report of the evaluation at issue, declared that he had not seen Plaintiff in eight months and was not in a position to render an opinion. (Tr. 254). The ALJ cited these reasons in explaining why Dr. Prince's physical capabilities evaluation "[was] not afforded controlling weight." (Tr. 17). These justifications constitute "good cause" to excuse the ALJ from giving substantial weight to Dr. Prince's evaluation.

      **b.     The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff further contends that, because the ALJ discounted Dr. Price's evaluation, the ALJ's RFC determination that Plaintiff can perform sedentary work is unsupported by substantial evidence. (*See* Pl's Mem. at 11-13). While the ALJ's decision to discount Dr. Price's evaluation does not constitute error for reasons stated in the previous section, whether the ALJ's RFC determination is supported by substantial evidence is an independent question that must be considered separately. After considering the record as a whole, the court finds that the RFC determination is indeed supported by substantial evidence.

To begin with, even if Dr. Prince's evaluation were credited, the ALJ is not obligated to parrot his findings without critical consideration and judgment. To do so would constitute "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p. Courts have long recognized that the "determination of residual functional capacity is within the authority of the ALJ." *Beech v. Apfel*, 100 F.Supp.2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546; *Lewis v. Callahan*, 125 F.3d at 1440. This function is necessarily a duty of the ALJ, particularly because the determination of RFC requires considering not only medical evidence, but "all of the relevant evidence of a claimant's remaining ability to do work despite h[is] impairments." *Beech v. Apfel*, 100 F.Supp.2d at 1330. Furthermore, determinations of a number of issues are "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e). The RFC is one such issue in which "the final responsibility for deciding . . . is reserved to the Commissioner." 20

C.F.R. § 404.1527(e)(2). The only question before the court is whether the ALJ's RFC determination is supported by substantial evidence. *See Bloodsworth v. Heckler*, 703 F.2d at 1239.

The record abounds with evidence supporting the ALJ's conclusion. Dr. Sparks found Plaintiff's foot to have healed well and concluded that Plaintiff would be able to work in six weeks time (in August 2007). (Tr. 214). Several years of testing consistently failed to detect objective evidence of medical impairments. (Tr. 207-12). Dr. Prince likewise ran a battery of tests that were negative. (R. 244). Dr. Smith's physical capacity evaluation found Plaintiff capable of tasks consistent with sedentary work. (Tr. 235-37). Dr. Koe's physical exam similarly failed to reveal any problems and found Plaintiff to have "normal strength" during the same visit in which Plaintiff complained that she could not lift more than 5 pounds. The ALJ considered all of these medical sources in reaching his RFC evaluation. (Tr. 13-15). This is more than enough evidence to support the ALJ's conclusion.

VI. **Conclusion**

The court concludes that the ALJ's determination that Plaintiff was not disabled during the period insured is supported by substantial evidence, and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____25th____ day of September, 2012.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE